UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| BRIAN S. HUFF ) | |
| ) | |
| v. ) | NO. 2:07-CV-165 |
| ) | |
| SULLIVAN COUNTY JAIL, DARREN ) | |
| WARE, OFFICER HILL, OFFICER ) | |
| BLEDSOE, OFFICER WILES, OFFICER ) | |
| HARLESS, SGT. LEE CARSWELL, ) | |
| OFFICER MAC, OFFICER MOODY, ) | |
| OFFICER HIGGINS, LT. TIM STRAYHORN, ) | |
| OFFICER KOBILOSKY, DAVID BOTTOMS, ) | |
| and JAKE TESTER ) | |

## MEMORANDUM and ORDER

Brian S. Huff, a former prisoner in the Sullivan County Detention Center [SCDC], has filed this *pro se* civil rights suit under 42 U.S.C. § 1983 against multiple officers and inmates at the SCDC, as well as the facility itself. Based on the financial data supplied in plaintiff's affidavit, his application to proceed without prepayment of fees [Doc. 1] is **GRANTED.** Nonetheless, because plaintiff was a prisoner when this case was filed, he is **ASSESSED** the filing fee of three hundred and fifty dollars ($350). *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

In his complaint, plaintiff has tied his claims of wrongful conduct to each of the named defendants, making the allegations which follow.

1. Defendant Officer Hill "lied" to him, telling plaintiff that the seven inmates who had "jumped" him in his former cell [the sexual offenders cell] were gone, knowing that they were occupying that cell still.

2. Defendant Officer Bledsoe and defendant Tester [an inmate] endeavored to have plaintiff moved from the cell, though defendant Tester was the one who jumped in plaintiff's face and, impliedly, was the aggressor in some unexplained fracas.

3. Defendant Officer Wiles laughed every time plaintiff handed him a note, in which plaintiff complained about being "hit on" or being subjected to racial/sexual slurs. Not only did he laugh, but this defendant also told plaintiff to "be a man & quit whining."

4. Defendant Officer Harless referred to the "n_ _ _ _ _" and "baby raper" (sic) in seven cell [presumably, meaning plaintiff] and, when confronted with these statements [by plaintiff, impliedly], asked plaintiff if he "wanted a piece of him?" Plaintiff consulted defendant Officer Strayhorn, defendant Harless's superior officer, who told plaintiff to "watch [his] mouth"since Harless had denied the comments. Lewd remarks concerning plaintiff's sexuality were made. [According to plaintiff, he is bi-sexual. Though plaintiff does not describe his race or identify his charges, the Court infers that he is African-American and that his criminal charges involved a child sexual offense, given the content of the officer's purported remarks.]

5. Defendant Officer Carswell revealed to plaintiff's cell mates that plaintiff was sending notes concerning illegal activity and being "jumped." Plaintiff was moved to the "hole." Afterwards, this defendant officer permitted inmates whom he knew to be incompatible with plaintiff to be moved into plaintiff's cell. Defendant Carswell repeatedly told plaintiff that this jail was *his* jail and that it was no concern of plaintiff's as to whom he placed in plaintiff's cell.

6. Defendant Officer Mac told plaintiff that he hated "snitches." Then this defendant officer disclosed to plaintiff's fellow inmates that he [plaintiff] was lodging

2

complaints about serious situations. Officer Mac has a reputation for disclosing that an inmate is telling on other inmates.

    7. While not exactly clear, this claim seems to be asserted against Officer Higgins. The purported sequence of events out of which the claim arose will be recounted to place the claim in context.

    Plaintiff and Inmate Ware were housed, respectively, in day rooms A and B. Defendant Higgins and another officer ordered that the two groups of prisoners in those day rooms be taken to the yard separately. Apparently, at some point, this order was transgressed and, when plaintiff complained about it to defendant Higgins, this defendant told plaintiff to "quit whining" and to "get over it" because his Sergeant had instructed that the two groups should go together. As it turned out, defendant Ware did not go to the yard. Even so, incidents such as this endanger plaintiff and the inmates who support him.

    8. Defendant Strayhorn refused to investigate plaintiff's complaints against defendant Harless, even though other witnesses had heard officer Harless make remarks disparaging plaintiff. Defendant Strayhorn's only reply was that he had asked his officer and was told that nothing had been said. And that was the end of it. [Obviously, this claim is an extension of Claim 4.]

    9. Despite having been assured that his accusation against defendant Ware would remain confidential, defendant Officer Kobilosky openly discussed the matter with defendant Officer Bledsoe. Defendant Kobilosky's action in divulging this confidential matter is important because being labeled a "snitch" or filing charges on another inmate can place a prisoner in physical danger. The Court infers that plaintiff is claiming that the alleged disclosure created a threat to his physical safety.

10. Defendant Inmate Ware commented on plaintiff's sexuality, said that he would make plaintiff his "bitch, touched him, and threatened him over and over. Though plaintiff was guaranteed that Inmate Ware would not be permitted near him, this defendant has been allowed to remain in day room B, adjacent to day room A, where plaintiff is housed. And this inmate defendant makes threats and sends threatening notes to the inmates who made statements against him. The situation, unfortunately, amuses the guards. When something is said, plaintiff is viewed as the "bad guy" and it is he who is threatened to be moved for complaining to the officers.

11. Defendant Bottoms [an inmate] wrote notes to other inmates, signed plaintiff's name to the notes, then sat in the cell exposing himself to plaintiff. Plaintiff filed a complaint concerning this matter.

12. Defendant Tester [also an inmate] physically threatened plaintiff because of his antipathy towards plaintiff's sexuality.

The assorted incidents and conduct described above purportedly occurred during the first thirteen months of plaintiff's incarceration in the SCDC. An investigation into defendants' alleged misconduct was undertaken the day before plaintiff signed his pleading. However, it is plaintiff's position that, had his prior complaints been taken seriously, the situation could have been prevented.

According to plaintiff, defendants have violated his right not to be subjected to discrimination, sexual harassment, sexual assault, and slander. Plaintiff requests that arrangements be made for his release from the SCDC, perhaps through an "OR" [own recognizance] bond, house arrest or something else. Further, plaintiff requests an award of one hundred thousand dollars [$100,000] in damages for mental cruelty, discrimination,

4

sexual harassment, and assault.

The complaint now must be screened to determine whether it states a claim entitling plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

The first defendant named in the complaint is the SCDC itself. This defendant, however, is a non-suable entity because it is a building and not a "person" subject to suit within the meaning of § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, 1997 WL 225647, **1 (6th Cir. May 1, 1997).

Three defendants are inmates. The significance of this fact lies in the elements which must be alleged to construct a constitutional claim under 42 U.S.C. § 1983. To state a claim under the statute, plaintiff must show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America and (2) that the deprivation was caused by a person acting under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). The second element is missing here because plaintiff has pointed to nothing which establishes that defendants Ware, Bottoms, or Tester were state actors when they engaged in the alleged wrongful behavior.

The claims for damages are problematic also. Plaintiff does not allege, and it does not otherwise appear, that he sustained any physical injury as a result of the purported conduct and events. Under the Prison Litigation Reform Act, a prisoner may not bring a claim for emotional or mental harm absent a showing of prior physical injury. *See* 42 U.S.C. § 1997e(e). Here, plaintiff has not claimed that he suffered any physical injury as a result

5

of the alleged wrongful conduct and, thus, § 1997e(e) does not permit him to bring his claims for monetary damages.

The conduct of which plaintiff complains, in the main, are pejorative references to his sexual orientation, a racial epithet, and threats. These allegations, assuming they are true, manifest behavior on the part of the officer defendant which is despicable, outright unprofessional, and is likely a violation of the SCDC rules of conduct. But unfortunately for plaintiff, such conduct is not actionable under § 1983. "'Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.'" *Johnson v. Unknown Delatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). Though harassment and verbal abuse are denigrating and doubtlessly unpleasant, they do not comprise the type of infliction of pain reached by the Eighth Amendment. *Id*. (citing *Ivey*, 832 F.2d at 954-55). A plaintiff must show that a federal right was actually denied and not merely threatened to be denied. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

Plaintiff also advances claims of discrimination. These, however, are not supported by factual contentions describing, much less identifying, any *action*—as opposed to language—that constitutes discrimination based on plaintiff's sexual preference or race. Mere name-calling, without more, does not suffice to state a claim under the Equal Protection Clause. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (Constitution is not offended by the use of racially derogatory language and sexually explicit statements). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Id.* (citing, *inter alia, Ivey*, 832 F.2d at 955.)

Similarly, plaintiff's sexual abuse claim is lacking. Plaintiff does not point to a single action on the part of the officer defendants to support his claim of sexual abuse, though it might be inferred that the purported offending conduct was plaintiff's being touched by defendant inmate Ware. If being touched is the behavior characterized by plaintiff as sexual abuse, plaintiff does not assert where, how, or when the touching occurred. Nor does he identify what part of his body was touched by the other inmate. Absent such details, the Court is unable to conclude that plaintiff is asserting that the touching was sexual.

But if such a conclusion were warranted, "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1996). The Eighth Amendment is implicated where a prisoner is subjected to a situation which poses a substantial risk of harm to him and where defendants are deliberately indifferent to that risk. *Id.* However, one court has found that a prisoner's allegations that a guard squeezed his hand, touched his penis, pinned his body to a door with her body and that she told him to take off his sweatshirt and made sexually suggestive comments to him "'did not involve a harm of federal constitutional proportions.'" *Jackson v. Madery*, 158 Fed. Appx. 656, *662 (6th Cir. Nov. 17, 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)).

Plaintiff's allegation that he was "touched," while it might have offended him greatly, involves an action which is relatively minor in comparison to the alleged indignities suffered by the prisoner in *Boddie*, which the Second Circuit found not to be unconstitutional. Therefore, this Court concludes that plaintiff's allegation that prison officials ignored his complaints about a cell mate who "touched" and harassed him, without

7

anything more, fails to show that he was exposed to a serious risk of harm.

Finally, if the Court had authority to grant plaintiff's bond-related requests for relief, which it does not, *see Younger v. Harris*, 401 U.S. 37 (1971),[1] those requests have been mooted by plaintiff's release from confinement. [Doc. 8, Pl's Notice of Change of Address].

Therefore, this lawsuit will be dismissed by separate order for failure to state a claim entitling plaintiff to relief under § 1983.


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[1] *Younger* holds that federal courts should abstain from entertaining a lawsuit which would interfere with an ongoing state criminal prosecution where those state proceedings implicate important state interests and a plaintiff has an opportunity to raise the claims in that forum.